UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DONTAY L. JONES, | ) |
|         Petitioner, | ) ) ) |
|         v. | )   No. 2:20-cv-00620-JRS-MJD ) |
| DUSHAN ZATECKY, | ) ) |
|         Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

In June 2020, investigators at Putnamville Correctional Facility reviewed telephone calls by Dontay Jones and determined that he conspired with a partner outside the prison to smuggle in contraband. In his petition for a writ of habeas corpus, Mr. Jones challenges his conviction and sanctions in the disciplinary proceeding that followed. Mr. Jones' petition is **denied**, and this action is **dismissed**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

In June 2020, Analyst T. Maslin listened to a series of phone calls placed in January and February 2020. She determined that Mr. Jones placed these calls using another inmate's identification number. Dkt. 9 at 1. Maslin also determined the number Jones dialed belonged to a recently released inmate (the Callee). *Id.*

Maslin detailed relevant portions of the phone calls in a conduct report, dkt. 8-1, and explained the significance of some of the language used during the call in a confidential investigative report, dkt. 9. These reports describe the following sequence of events.

- January 24: Mr. Jones asks if the Callee remembers their previous operation selling contraband at recreation and wonders if they could execute a similar operation with the Callee outside the prison. Mr. Jones says he wishes they had access to "space ships," or drones that could fly over the prison walls and drop contraband inside.

- February 1: Mr. Jones agrees to help the Callee purchase a computer, which they will use to print magazines soaked in chemicals.

- February 2, Mr. Jones and the Callee discuss which magazines would be soaked in chemicals.

- February 7: The Callee describes how he used acetone to distribute the chemicals evenly in the papers and paid another associate to help.

- February 10: The Callee describes his plan to print the magazines.

- February 18: Mr. Jones tells the Callee to let him know "when flight risk is out," or when the magazines are sent to the prison.

- February 20: The Callee tells a story about making his sister change clothes before she went out. Maslin understood this to mean that the Callee altered the magazines' appearance before sending them to the prison.

- February 21: The Callee states he is going to talk to his sister the following day "and send her out on that date." He "had to work around something" but "finished up everything." Mr. Jones relayed that "[t]hey sweating me man."

2

> Maslin understood this to mean that the Callee was ready to mail the magazines and other prisoners told Mr. Jones they were anxious to receive them.

Dkt. 8-1; dkt. 9.

Maslin's five-page conduct report charged Mr. Jones with conspiring to traffic chemically treated papers and included the following explanation:

> Based on recent investigations, knowledge, experience of the prison system and offender trends/known practices, this type of verbiage is often associated to criminal activity, specifically related the trafficking of contraband into correctional facilities. Offenders are known to use this type of verbiage or code to avoid detection and direct friends and/or loved ones to retrieve and/or send contraband intended for a correctional facility.

Dkt. 8-1 at 4.

On July 1, 2020, Mr. Jones received a screening report notifying him of the charge. Dkt. 8-2. The screening officer wrote that Mr. Jones requested a transcript of the phone calls. *Id.* A separate notation states, "waive transcripts" in different handwriting, with "Dontay L Jones I" written next to it in script. *Id.* Mr. Jones asserts that someone else wrote that notation and signed his name after his disciplinary hearing. Dkt. 12 at 2. The notation is not visible on the copy of the screening report he submitted with his petition. Dkt. 2-1 at 6.

Mr. Jones was found guilty at a hearing on July 20. Dkt. 8-5. The hearing officer considered the conduct report and Maslin's investigative report before finding Mr. Jones guilty. *Id.*; dkt. 13-1 at ¶ 5. To explain his reasoning, the hearing officer wrote, "H/O finds offender guilty due to the report of conduct and the OII Report." Dkt. 8-5.

The hearing officer assessed sanctions, including a loss of earned credit time and a demotion in credit-earning class. *Id.* Mr. Jones brought two unsuccessful administrative appeals based on a variety of issues, including failures to comply with Indiana Department of Correction (IDOC) policies and a lack of supporting evidence. Dkts. 8-6, 8-7.

### III. Analysis

Mr. Jones challenges his disciplinary conviction and sanctions on four grounds: it was not supported by sufficient evidence; he was wrongly denied evidence to use in his defense; the hearing officer became involved in investigating his charge and therefore was not impartial; and the hearing officer did not adequately explain his decision. The Court cannot award habeas relief on any of these grounds.

#### A.     Sufficiency of Evidence

Mr. Jones asserts that the hearing officer's decision lacked evidentiary support. He notes (accurately) that Maslin's conduct report did not name his alleged co-conspirator or identify the phone number he allegedly called and that no audio or video evidence or call transcripts were produced. He also asserts (inaccurately) that the confidential investigative report referenced in the conduct report was never presented to the hearing officer.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the

4

evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Code 113 prohibits "[g]iving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person; or receiving, buying, trading, or transferring; or in any other manner moving an unauthorized physical object from another person without the prior authorization of the facility warden or designee." Dkt. 8-8 at § 113. Maslin's conduct report and investigative report—both of which the hearing officer reviewed—document that Mr. Jones worked with another person to attempt to move unauthorized objects into the prison. To be sure, this documentation was not explicit. But Maslin included a statement explaining specifically how she understood the meanings of Mr. Jones' conversations with the Callee based on her experience and other investigations.

Maslin's conduct report and investigative report were "some evidence" of Mr. Jones' guilt. Regardless of what evidence was absent from the record, those reports satisfied the due process requirement that some evidence support the hearing officer's decision.

**B.     Denial of Evidence**

Mr. Jones next argues that his request to review a transcript of the phone call was wrongly denied. As noted above, there is an evidentiary dispute as to whether Mr. Jones requested (or later waived his request for) the transcript. However, Mr. Jones did not raise this issue in his administrative appeals, *see* dkt. 8-6, so the Court may not resolve it here.

A court may not grant a habeas petition "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). When the petitioner "has not exhausted a claim and complete exhaustion is no longer available, the claim is

procedurally defaulted," and the district court may not grant habeas relief based on it. *Martin v. Zatecky*, 749 F. App'x 463, 464 (7th Cir. 2019). Because Indiana law does not provide for judicial review of prison disciplinary proceedings, § 2254(b)(1)'s exhaustion requirement demands that the prisoner exhaust his claims through the IDOC's administrative appeals process. *Moffat*, 288 F.3d at 981–82.

The respondent has not filed or cited the IDOC's administrative appeals process. Still, there is no dispute that the process exists and consists of two steps, as Mr. Jones presented administrative appeals to the facility head and appeal review officer. Dkts. 11-7, 11-8; *see also Jackson v. Wrigley*, 256 F. App'x 812, 814 (7th Cir. 2007) ("To avoid procedural default, an Indiana prisoner challenging a disciplinary proceeding must fully and fairly present his federal claims to the facility head and to the Final Reviewing Authority."). There also is no dispute that Mr. Jones failed to raise the denial of his transcript request in his administrative appeals.

By failing to provide details about deadlines or other limitations on the administrative appeals process, the respondent has fallen short of demonstrating that "complete exhaustion is no longer available." *Martin*, 749 F. App'x at 464. Thus, the Court also cannot deem Mr. Jones' transcript argument procedurally defaulted. Nevertheless, the argument is not exhausted, and the Court cannot entertain its merits at this time.

### C.     Impartial Hearing Officer

Mr. Jones next argues that the hearing officer abdicated his duty to remain impartial by delaying his disciplinary hearing to speak with Maslin. *See* dkt. 8-4. It is true that hearing officers can be deemed partial by becoming "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Piggie v. Cotton*, 342 F.3d 660, 667 (7th Cir. 2003).

6

Nevertheless, Mr. Jones also failed to raise this argument in his administrative appeals. Dkt. 8-6. He asks the Court to excuse his failure to exhaust this argument because he did not know the "legal basis" for it until October 20, 2020. Dkt. 2 at 2; *see Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) ("A procedural default will bar a federal court from granting relief on a habeas claim *unless* the petitioner demonstrates cause for the default and prejudice resulting therefrom, . . . or, alternatively, he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits.") (internal citation omitted). But Mr. Jones received the postponement notice on July 7, 2020, and it plainly stated the reason for the delay. Dkt. 8-4 at 1. Mr. Jones has not demonstrated good cause for failing to raise this argument in his administrative appeals, and he does not argue that he will suffer a miscarriage of justice if the Court does not consider it here. The Court cannot rule on the merits of Mr. Jones' impartial-hearing-officer argument because he failed to exhaust administrative remedies.

**D.     Written Explanation of Decision**

Finally, Mr. Jones argues that the hearing officer violated his right to a written statement of the reasons underlying his decision. Mr. Jones also failed to raise this argument in his administrative appeals, *see* dkt. 8-6, and his failure to exhaust the issue precludes this Court from considering it. Regardless, the written-statement requirement is not "onerous," and the hearing officer "need only illuminate the evidentiary basis and reasoning behind the decision. *Scruggs*, 485 F.3d at 941. The hearing officer's explanation—that Mr. Jones was guilty based on the investigatory report and conduct report—clears this minimal threshold.

## IV. Conclusion

Dontay Jones' petition for a writ of habeas corpus challenging disciplinary case ISF 20-06-0381 is **denied**. Claims alleging denial of evidence and a biased hearing officer are **dismissed**

7

**without prejudice** for the reasons discussed in Parts III(B) and (C). *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) ("[T]he proper remedy for failure to exhaust administrative remedies is to dismiss the suit without prejudice[.]"). All other claims are **dismissed with prejudice**.

The **clerk is directed** to enter **final judgment** consistent with this entry.

**IT IS SO ORDERED.**

Date:   10/1/2021

*JAMES R. SWEENEY II, JUDGE*
United States District Court
Southern District of Indiana

Distribution:

DONTAY L. JONES
973951
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Frances Hale Barrow
INDIANA ATTORNEY GENERAL
frances.barrow@atg.in.gov